Jimmy O Smith  　　　　　　　Dated: August 25, 2010
　Plaintiff
　　　　　　　　　　　　　　　**3 1 0 C V 1 4 3 7 A W T**
　　　　　　　　　　　　　　　Docket No.

　　　v.

John O'conner, Lou Boy, Pam Richard,
sherry Ziolkouski, Richard Ruiz, Dr.
chowhan, Warden Lee, Warden Erfe,
Credit, and Robert Farr Sued in Their
Individual Capacity's. (only).

　　　Defendants

*FILED 2010 SEP -8 P 2:15*

　　　＊　Preliminary Statement

　　This is a civil rights action filed by Jimmy Smith, a state prisoner, for damages & injunctive relief under 42 U.S.C. §1983, alleging denial of outside medical care, denial of access to court and the torts negligence. Plaintiff also alleges excessive use of force and abuse of discretion by Board of Pardons & Paroles to conspire to prejudice him at a hearing to impose longer incarceration. The Parole officials failed to establish a criteria prior to a hearing, discriminated against plaintiff pursuant to race and nature of charges. Parole used unrelated events and uncharge incidents to prejudice plaintiff. Plaintiff had a ligitimate liberty interest and private interest in obtaining early release. The I, IV, V, VI, VIII, and XIV amendment of the U.S. constitution, federal constitution & state laws violated.

## * Jurisdiction *

1. The court has jurisdiction over the plaintiff's claims of violation of federal constitutional rights under 42 U.S.C. §§ 1331(a) and 1343.

2. The court has supplemental jurisdiction over the plaintiff's state law torts claims under 28 U.S.C. § 1367.

## * Parties *

3. The plaintiff, Jimmy Smith, was incarcerated at Cheshire Correctional Inst., and is now incarcerated at Radgowski Correctional Inst. (Uncasville) during the events described in this complaint.

4. Defendant's John O'Conner, Lou Roy, Pam Richard, Sherry Ziolkowski and Robert Farr are employed by Board of Pardons & Paroles. Ziolkowski is stationed at Radgowski where she interview inmates eligible for parole prior to a parole hearing. Robert Farr is chairman who oversee's parole officers. They are sued in their individual capacities (only).

5. Defendant's Richard Ruiz is a Medical Administrator at the Cheshire facility, and Warden Lee is Warden. Ruiz is responsible for ensuring provision of medical care to prisoners... Lee is responsible for reviewing all administrative appeals... Both have the authority to schedule medical appointments etc. They are

sued in their individual capacities (only).

6. Defendant Credit is a civilian working as secretary in the annex building handling inmates outgoing mail (legal mail) etc. She is responsible for approving or denying mail if it's overweight and require inmates to pay additional funds. Credit is violation of Directive 2.17 and state law, "Bound v. Smith". She is sued in her individual capacity (only). She works at Radgowski.

7. Defendant's Dr. chauhan and Warden Scott Erfr is employed at Radgowski Corr. Inst. Chauhan is the Medical Administrator, responsible for ensuring medical care... Erfr is responsible for reviewing all administrative appeals. Both are responsible for scheduling medical appointments outside the prison when prisoners need special treatment. They are sued in their individual capacities.

8. All defendants have acted, and continue to act, under the color of state law, in violation of the United States Constitution, at all times relevant to this complaint. All defendants violated clear establish laws.

## * FACTS *

* 9. Cheshire Facility Incident *

On September 18, 2008, Plaintiff Smith complained of a serious rash growing on his left leg, he complained of severe

itchings, skin becoming dead and peeling rapidly. Defendant Ruiz (only) provided ointment to no avail. Smith requested to see a (Dermatologist) at Uconn and was denied. The rash worsen and grew. Smith filed grievances but in vain. He then filed a (Health Service Review) form.

10. Smith requested Defendant Warden Lee intervene but he refuse. Ruiz answered the health Review, met with Smith and promised to remove dead skin from his leg to send out for testing. (9) months pass and Smith never heard from Ruiz. Smith endured agony of physical pain day & night from the irratated skin rash. He filed more grievances in vain.

11. After Smith's sentencing on April 30, 2009, on or about May 2009, cheshire official transferred Smith to Bridgeport correctional center. Smith was not sent to Walker correctional facility for assesment like all other inmates. Smith was a protected custody inmate from 2006 - June 2009, and a pre-trial detainee until April 30, 2009.

12. Smith was transferred to Bridgeport with (20) other inmates (out of retailiation) and placed in the (protected custody) area in plain view of other inmates not in (PC). The conditions were horrible and designed to force (PC) inmates out of (PC). Smith was forced to sign out. On or about June 2009, he was transferred to a level (4) facility at Radgowski.

13. Smith was Pro Se in his criminal appeal and numerous civil federal actions. Upon soon arriving at Radgowski

Smith signed up for voices program, Anger Management program, Culinary Arts and attended the prison fellowship seminar.

## * Radgawski Facility Incident *

14. The plaintiff requested to see the Doctor, and was seen by Defendant Chawhan. Smith explained that in the past he was given ointments for his medical condition but they did nothing. He requested to see a dermatologist at Uconn and was denied. Chawhan gave him the same ointment provided by Ruiz.

15. Smith condition worsen, he requested to see a mental health counselor as he did at Cheshire. And for another year and half he endured severe torment from the itchings, trying his best to abstain from scratching his leg, but could not refrain from it. Smith saw Chawhan again, was denied outside medical again and given ointment. Smith filed a grievance, but to no avail. The rash, dead skin etc. has begin to spread to other parts of plaintiff's leg.

## * Denial of Access To Court *

16. Plaintiff Smith holds a job at the Radgawski facility, he makes $10.50 every week, but only take in $8.40 due to filing past federal and state lawsuits. Upon entering Radgawski Smith was indigent pursuant to a D.O.C. policy, he was denied legal envelopes by counselor Doran in the "D" Block and

filed grievance to no avail.

17. Smith was transferred to the annex building where he continue to litigate Pro Se in Criminal court (Appellate Court) and in the federal civil courts. Court orders were sent to Smith requiring his response, but whenever Smith would act to respond and forward legal mail, "civilian" Credit working in the mail room would resend them back to the plaintiff.

18. The plaintiff's case in the Second Circuit court of appeals, suffered injury, because mail being delayed (pursuant to filing a Rehearing En Banc) did not reach the court in a timely manner, causing the court to not even consider the motion. See: white v. white, 886 F.2d 721, 724 (4th circuit 1989).

19. Defendant Credit (only), on one occasion allowed the plaintiff's legal mail access to the court after Smith filed a complaint and forwarded it to:

1) Governor Rell's office
2) Attorney General's office
3) Commissioner Brian Murphy
4) Warden

20. Defendant Credit then reverse to her usual ways once again denying plaintiff's legal mail, until plaintiff had enough money on his book. Credit violated a D.O.C. policy Directed 2.17 and establish law in Bounds v Smith. On or about August the U.S. Supreme Court refuse to entertain a writ

of certiorari alleging it was untimely filed.

21. Smith filed numerous grievance again to no avail. Smith also requested to see "mental health" alleging mental anguish, stress and anxiety due to a denial of access to the courts and a refusal to provide outside medical care.

## Parole Board Hearing

22. On April 30, 2009, the honorable Judge David Gold sentenced Smith to (20) years suspended after (8½) years, followed by (5) years probation. Gold ordered that "Smith recieve ... (1) Mental Health Evaluation ... (2) Anger Management ... and (3) Proper parenting program."

23. Smith was charged with (2) counts of C.G.S. §53-21(a)(1) under information "he failed to supervise or provide a safe haven for his child." Smith maintained that he did not cause injury to his child. After sentencing, Smith was not afforded assessment by D.O.C at Walker Corr. Inst., and never met with any parole officials as (most inmates) to establish a criteria to be met to better his chances of early release after serving 50% of said sentence.

24. Smith parole eligibility date was on or about October, 2010. Upon arriving at Radgowski on or about June, 2010, Smith signed up for programs: ...(1) Voices ... (2) Anger Management ... and (3) Culinary Arts. Plaintiff had completed

a prison christian fellowship program recieving a certificate.

25. Plaintiff was accepted and placed on a list for voices & Angermanagement. Prior to awaiting he was selected to attend a (6) month culinary Arts program. On or about 2009 the Radgowski facility canceled, Voices & Anger Management. Smith completed the Culinary Arts in March 2010.

26. Smith begin to anguish and stress about the canceled programs with a parole hearing approaching. Plaintiff then develope a plan to request at Parole he be granted the privilege to attend a halfway house for (18) months to complete voices and anger management along with proper parenting before being release on parole or prior to it.

27. Defendant sherry Ziolkowski, a parole officer working at Radgowski as a "Parole Review official" never at any time called Mr. Smith to her office, until smith wrote a personal notice complaining.

28. On June 2010, a week before a Parole hearing (unknown) to the plaintiff, Ziolkowski call smith to the office to prepare his parole package. she asked questions about what Smith wanted, about programs etc. Smith stated his goal was to attend a halfway house and completed programs canceled at Radgowski prior to being release or before.

29. Smith explained that programs was canceled. That he did take (2) others but desired the others as well. Ziolkowski acknowledge

that Smith was on a list prior to programs being canceled. She brought up Smith's criminal past. Smith stated there was some charges in the package that was not his, and asked that they be removed. Ziolkowski agreed stating she would take care of it.

30. Smith noticed that the (2) programs that he did complete was not in Ziolkowski's file. He reminded her of this, and was told to bring them again the next day to be copied. Smith did so. Smith also stated he did not injured his child.

31. On June 18, 2010, Smith was brought next door to corrigan corr. facility to be interview by a Parole panel of defendants O'cconer, Roy, and Pam Richards. The panel members then asked smith about a (20) year old criminal record, uncharged (unrelated) events and uncharge incidents.

32. The board also brought up the charges Smith disputed when he was interviewed by Ziolkowski, that Smith allege did not belong to him. The board asked, "why didn't you complete Voices & Anger Management?" Smith explained according to the above-stated-facts.

33. The board then begin asking plaintiff extensively, if he did caused injuries, plaintiff fearing the panel would deny him parole, stated he caused injuries, the panel asked how? Smith alleged because he failed to supervise his child and provide a safe-haven, the board panel members then became enraged at Smith.

34. Upon returned after (1) minute, Smith was denied parole and the privilege to complete programs at a half-way house. Defendants insisted plaintiff complete programs before being considered for parole or a half-way house. And that Smith speak with his counselor about being transferred to another facility to complete programs.

35. The deprivation of liberty affected Smith's private interest and liberty interest. Smith was then told that his next parole date would be on 09/2012, thus violating federal and state law... § 4208 (h)(1), federal criminal code & Rules. which:

36. Requires (18) months in the case of a prisoner with a term or terms of more than one year but less than seven years. Smith had (4) years remaining. The defendants then shielded it's decision it discretionary.

37. Defendants stated Reasons: ... (1) criminal history ... (2) current offense committed while on probation ... (3) injury to victim ... (4) poor institutional record and ... (5) lack of programs. Smith has not had a Disciplinary Report over (2) years.

38. On or about July 2010, Radgowski restarted one of it's prior canceled program. Smith who was on the list was not accepted. The Parole Board insisted Smith also take Domestic violence, but when Smith requested to be taken in by prison officials he was denied and told by warden, defendant Erfi to wait.

39. Smith filed a complaint with the chairman of Boards of Pardons & Paroles, defendant Robert Farr, Explains of the violations etc. The complaint request reconsideration for parole and a half-way house were denied.

40. On or about August 2010, defendant Robert Farr, Pam Richard, and Ziolkouski approved an inmate to attend a half-way house prior to parole. They told the inmate he could complete ... (1) voices ... and (2) Anger Management at the half-way house if he did not complete it at Radgouski.

41. The other inmate (name with-held) is (white), Smith is (Black). The act was prejudice and exhibited discrimination by the Board of Pardons and Parole, who did not believe Smith's punishment fitted the charges, would not approve him for early release at 50%, but denied him parole forcing him to serve 75% of said sentence to impose longer incarceration.

42. The C.G.S. § 54-125a. (b)(1), (c), (d), and (e) is violated. The plaintiff was eligible for parole after serving 50% of said sentence, and is now eligible after 75% of said sentence. The act by said defendants was allegedly encourage by the prosecutor Sandra Tullius who prosecuted Smith in a criminal case.

# * Claims For Relief *

43. The failure of Defendants Ruiz, Lee, chauban, and Erfe to provide adequate outside medical care and treatment, constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the 8th amendment to the United States constitution.

44. The failure of Defendants Miss Credit and Erfe to provide plaintiff his right to access to the courts, defy one DOC policy, and use an indigent policy to harm Smiths case and violate establish law, constitute deliberate indifference and violates the Due process clause, equal protection clause, the 1st amendment, Privileges & immunities clause of Article IV of the U.S. constitution, and the VI amendment.

45. The acts of Defendant's O'conner, Roy, Richard, and Farr, and their failure to asses the plaintiff in advance prior to a parole hearing, or establish a criteria to be met, does constitute cruel & unusual punishment; discrimination, an abuse of discretion, prejudice, and deliberate indifference.

46. Defendants Jeopardized the plaintiff's private interest in being release and violated his rights acting maliciously and intentionally to impose longer incarceration. Thus also violating the I, V, VI, VIII, and XIV amendment of the U.S. Constitution.

## * Relief Requested *

Wherefore, plaintiff requests that the court grant the following relief:

(A). Issue a declaratory Judgment stating that:

1. That Defendants Ruiz, Lee, Erfr, and Chauhan actions denying medical care continues to violate plaintiff's right under the 8th amendment.

2. That Defendants Erfr and credit action violates and continues to violates the plaintiff's right under the I, VI, VIII, and XIV amendment, and violates the law in Bands v Smith.

3. That Defendants O'conner, Ray, Richard, and ~~Farr~~ actions violates and continue to violate the plaintiff's private interest and liberty interest, and constitute an deliberate indifference and discrimination.

(B). Issue An Injunction ordering defendants Ruiz, Lee, Erfr, and Chauhan or their agents:

1. Immediately arrange for the plaintiff to be seen by an experience (Dermatologist) at Uconn Medical Center, to be examined, by a qualified physician. And carry out treatment ewithout delay.

(C). Issue an Injunction ordering Defendants Credit and Erfr to:

1. Cease using an indigent policy to violate establish law pursuant to Bounds v. Smith. Obey Dir. 2.17 and allowing access to the court. Allow legal mail to be forwarded to courts without delay. Or Place a hold on Plaintiff's account until legal mail is paid for.

(D). Issue an Injunction ordering Defendants O'Conner, Richard, Roy, Ziolkowsk, and farr, to:

1. Asses all prisoners eligible for parole years in advance prior to their eligibility date of early release. Step using race, or the nature of the charge to prejudice & discriminate against inmates pursuant to who goes to a halfway house prior to parole.

2. Allow the plaintiff the opportunity to take advantage of completing programs at a halfway-house sooner rather than later. Set plaintiff's next parole date pursuant to rules § 4208 (h)(1) requiring (18) months for new parole date. Remove false information from parole file.

(E). Award Compensatory damages and Punitive damages in the following amount:

1. $100,000 in Punitive damages against defendants Richard Ruiz, Warden Lee, Warden Erfr, and Docter Chawhan for the psychological and physical injury, mental anguish, anxiety, and ongoing physical damages and deterioration to plaintiff's leg. pursuant to (3) years of suffering and denial of adequate outside medical attention. In their individual capacities.

2. $50,000 in Punitive damages against defendant Warden Erfr and credit in their individual capacities Jointly and Severally for harming plaintiff's legal issues and denying access to the courts. causing mental anguish, psychological injury and anxiety.

3. $50,000 in Punitive damages against defendants O'conner, Roy, Richard, Farr, and Zioltrauski. in their individual capacities Severally or Jointly for discrimination and depriving plaintiff of liberty at 50% to impose longer incarceration at 75% or more. causing emotional psychological stress, anxiety and mental anguish.

(F). Grant such other relief as it appears the plaintiff needs and is entitled.

Respeatfull Submitted

By: *Jimmy Smith*
Jimmy Smith 334426
Radgawski Corr. Inst.
986 Norwich - New London Tpke
Uncasville, CT 06382

\* Retaliation Expected \*