UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


JIMMY D. SMITH,                    :
        Plaintiff,                 :
                                   :
    v.                             :     Case No. 3:10cv1437(AWT)
                                   :
JOHN O'CONNOR, et al.,             :
        Defendant.                 :


RULING ON PLAINTIFF'S MOTION TO AMEND [Doc. #24] AND
DEFENDANTS' MOTION TO DISMISS [Doc. #16]

The plaintiff filed this action *pro se* under 42 U.S.C. § 1983 (2000).  He named as defendants John O'Connor, Lou Roy, Pam Richard, Sherry Ziolkowski, Dr. Richard Ruiz, Dr. Chouhan, Warden Erfr, Warden Lee, Credit and Robert Farr.  The plaintiff asserts several unrelated claims, including deliberate indifference to a serious medical need, denial of access to the courts and denial of parole.  On February 15, 2011, the defendants moved to dismiss the complaint.

In response, the plaintiff filed a memorandum in opposition and a motion to amend his complaint.  The plaintiff states that his amended complaint will clarify his claims.  In the amended complaint, the plaintiff adds one defendant, Brian Murphy, and includes claims against all defendants in their official capacities.

The court is granting the motion to amend and then considering the motion to dismiss as applied to the claims in the amended complaint.  In addition, the court is reviewing any new claims in the amended complaint pursuant to 28 U.S.C. § 1915A. For the reasons that follow, the defendants' motion to dismiss is being granted and the amended complaint is dismissed.

I.  Legal Standard

When considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 143 (2d Cir. 2003).  The court considers not whether the plaintiff ultimately will prevail, but whether he has stated a claim upon which relief may be granted so that he should be entitled to offer evidence to support his claim.  *See York v. Association of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002).

In reviewing the complaint in response to a motion to dismiss, the court applies "a 'plausibility standard,' which is guided by two working principles." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).  First, the requirement that the court accept as true the allegations in the complaint "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of

2

the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949). Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief. Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950). Even under this standard, however, the court liberally construes a *pro se* complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Boykin v. KeyCorp*, 521 F.3d 202, 213-14, 216 (2d Cir. 2008).

II.   <u>Factual Allegations</u>

    A.   <u>Deliberate Indifference to Serious Medical Need</u>

In September 2008, the plaintiff complained to medical staff about a rash on his left leg. Dr. Ruiz prescribed ointment. The ointment did not alleviate the itching, irritation and pain, so the plaintiff asked to be sent to a dermatologist at an outside hospital. Dr. Ruiz denied the request and stated that he would do further tests and remove dead skin from the plaintiff's leg. Dr. Ruiz did not do so during the following seven or eight months and did not see the plaintiff again.

The plaintiff continued to complain of the rash in 2009 and 2010. Dr. Chouhan prescribed the same ointment as Dr. Ruiz. The

plaintiff explained that the ointment did not work and requested examination by a dermatologist.  Dr. Chouhan refused these requests.

B.  Denial of Access to the Courts

The plaintiff was representing himself *pro se* in his criminal appeal.  When he had sufficient funds, he would send legal materials to the court.  During 2010, the plaintiff was representing himself in civil litigation as well as his criminal appeal.  If he did not have sufficient funds for postage, defendant Credit would hold his legal mail until he could pay for postage.  The plaintiff states that a motion for rehearing *en banc* was denied because it was untimely filed and a motion for extension of time was denied as untimely by the United States Supreme Court.

C.  Denial of Parole

In April 2009, following a plea to lesser charges, the plaintiff was sentenced to a term of imprisonment of eight years and six months, followed by five years probation.  As part of the sentence, the judge ordered that the plaintiff receive treatment.  After sentencing, the plaintiff was not sent to the MacDougall-Walker Correctional Center for assessment.  When he arrived at the Corrigan-Radgowski Correctional Center, the plaintiff signed up for two programs, Voices and Anger Management.  Unfortunately, the programs were cancelled before the plaintiff could attend.

4

The plaintiff's earliest parole eligibility date was October 2010. Approximately one week before the parole hearing, defendant Ziolkowski met with the plaintiff to review his file. The plaintiff asked that he be paroled to a half-way house to enable him to attend the Voices and Anger Management programs and obtain employment.

Defendants Roy, O'Connor and Richard presided at the plaintiff's parole hearing. They questioned the plaintiff regarding an old felony conviction and the original charge that was dismissed in exchange for his guilty plea. They also noted that he had not completed the Voices and Anger Management programs. Parole was denied. The denial was based on the failure to complete the programs, his criminal history, his poor disciplinary history, the fact that he previously had committed a crime while on probation and the board's discretion.

III. Discussion

A.   Deliberate Indifference to Serious Medical Need

The plaintiff contends that defendants Drs. Ruiz and Chouhan and Warden Lee were deliberately indifference to his serious medical need by failing to provide proper medical care for his rash or schedule a consultation with a dermatologist.

The plaintiff states that he was a pretrial detainee at the time he was treated by Dr. Ruiz. Regardless whether the plaintiff was a pretrial detainee or a sentenced prisoner, the

same standard applies.  *See Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (holding that same standard applies to deliberate indifference claims brought under the Eighth and Fourteenth Amendments).

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  To state such a claim, the plaintiff must allege facts demonstrating sufficiently harmful acts or omissions and intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel.  *Id.* at 104-06.

Because mere negligence will not support a section 1983 claim, not all lapses in prison medical care constitute a constitutional violation.  *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).  In addition, inmates are not entitled to the medical treatment of their choice.  *See Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).  Mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment.  "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."  *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).  The conduct complained of must "shock the

6

conscience" or constitute a "barbarous act." *McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988). In addition, the fact that a prison official did not alleviate a significant risk that he should have but did not perceive does not constitute deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 838 (1994).

There are both subjective and objective components to the deliberate indifference standard. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied sub nom. Foote v. Hathaway*, 513 U.S. 1154 (1995). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must produce death, degeneration or extreme pain. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions. *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006).

The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition. For example, a medical condition significantly affecting the inmate's daily activities or causing chronic and significant pain or the existence of an injury a reasonable doctor would find important constitutes a serious medical need. *See Chance*, 143 F.3d at 702. In addition, where the denial of

treatment causes an inmate to suffer a permanent loss or life-
long handicap, the medical need is considered serious. *See
Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000).

Courts in this circuit have found that a skin rash is not a
sufficiently serious medical need to support an Eighth Amendment
claim. *Hill v. Chalanor*, No. 9:06-CV-0438(GTS/GHL), 2009 WL
6315325, at * 8 (N.D.N.Y. June 8, 2009) (citing *Lewal v. Wiley*,
29 Fed. Appx. 26, 29 (2d Cir. 2002) (persistent rash is not a
serious medical condition)), *Report and Recommendation adopted by*
2010 WL 1257930 (N.D.N.Y. Mar. 25, 2010). *See also Stepnay v.
Goff*, 164 Fed. Appx. 767, 2006 WL 182059, at *2 (10th Cir. 2006)
(Inmate with staph infection "may not avoid dismissal ... by
merely asserting conclusory allegations that his condition
obviously required a doctor's attention because most skin
conditions are not intuitively serious."); *Ray v. Cherrian*, No.
10 C 4066, 2010 WL 2696119, at *2 (N.D. Ill. July 2, 2010)
(fungal rash does not rise to the level of an objectively serious
medical need); *Gonzalez-Reyna v. Ellis*, No. 1:09cv522, 2009 WL
2421482, at *3 (E.D. Va. July 27, 2009) ("[I]t is doubtful that a
skin rash, even one which causes pain and itching, is a
sufficiently serious medical need to support an Eighth Amendment
violation.").

Further, both Dr. Ruiz and Dr. Chouhan treated the
plaintiff's rash.  The fact that the treatment did not work and

8

the plaintiff wanted other treatment does not state a constitutional claim. *See Chance*, 143 F.3d at 703 (disagreement over proper treatment does not state a constitutional claim); *Bryant v. Wright*, No. 09 Civ. 2456(GBD)(GWG), 2010 WL 3629443, at *9 (S.D.N.Y. Aug. 31, 2010) (the fact that the plaintiff suffered from a painful skin condition that did not respond to treatment did not demonstrate deliberate indifference), *Report and Recommendation adopted by*, 2010 WL 3629426 (S.D.N.Y. Sept. 15, 2010).

The plaintiff also included Warden Lee as a defendant on this claim. The only allegation against defendant Lee is that he referred the plaintiff's request for medical treatment to Dr. Ruiz. It is well established in this Circuit that prison officials may rely of the opinions of the medical staff. *See Rodriguez v. McGinnis*, No. 98-CV-6031CJS, 2004 WL 1145911, at *18 (W.D.N.Y. May 18, 2004) (citing cases). Therefore, the defendants' motion to dismiss is being granted as to the deliberate indifference claim.

B.   Denial of Access to the Courts

The plaintiff contends that defendants Credit and Erfr denied him access to the courts by waiting until he could afford the postage costs to mail documents to the courts.

It is well established that inmates have a First Amendment right of access to the courts. *Bounds v. Smith*, 430 U.S. 817,

828 (1977) (*modified on other grounds by Lewis v. Casey*, 518 U.S. 434, 350 (1996)).  To state a claim for denial of access to the courts, the plaintiff must demonstrate that the defendants acted deliberately and maliciously and that he suffered an actual injury.  *See Lewis*, 518 U.S. at 353.

To establish an actual injury, the plaintiff must allege facts showing that the defendants took or were responsible for actions that hindered his efforts to pursue a legal claim, prejudiced one of his existing actions, or otherwise actually interfered with his access to the courts.  *See Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 2002).  For example, the plaintiff could demonstrate an actual injury by providing evidence "that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of the deficiencies in the prison's legal assistance facilities, he could not have known."  *Lewis*, 518 U.S. at 351.

The plaintiff fails to allege any facts demonstrating an actual injury to support his claim of denial of access to the courts.  He alleges only that motions for rehearing *en banc* and for extension of time were denied as untimely filed.  The fact that the plaintiff may not have been able to litigate effectively once his case was filed does not constitute an actual injury.  *See id.* at 355 (disclaiming any requirement that inmates be afforded sufficient resources to litigate effectively once their

claims are brought before the court).  The plaintiff fails to
state a claim for denial of access to the courts.

     C.   <u>Denial of Parole</u>

     The plaintiff contends that defendants Farr, O'Connor, Roy,
Richard, Ziolkowski and Murphy deprived him of his protected
liberty interest in parole, failed to schedule another parole
hearing soon after the first one, and failed to meet with him to
establish criteria that he must meet to be awarded parole and
ensure that he attended all required rehabilitative programs.

     The plaintiff bases many of his claims regarding parole on
the deprivation of a protected liberty interest.  The plaintiff,
however, has no protected liberty interest in release on parole.

     The Supreme Court has held that there is no constitutional
right to parole.  *See Greenholtz v. Nebraska Penal Inmates*, 442
U.S. 1, 7 (1979) ("There is no constitutional or inherent right
of a convicted person to be conditionally released before the
expiration of a valid sentence.").  In addition, Connecticut
courts have held that there is no protected liberty interest in
parole under state law.  *See Baker v. Commissioner of Correction*,
281 Conn. 241, 257 (2007) (holding that discretionary language in
Connecticut parole statutes and regulations precludes existence
of protected liberty interest in parole); *Taylor v. Robinson*, 171
Conn. 691, 697-98 (1976) (holding that inmates have no right to
demand or apply for parole and parole board is not required to

consider any inmate's eligibility even if the inmate meets the statutory requirements).  Thus, the plaintiff's due process challenge to the denial of parole or another parole hearing is without merit.

In addition, parole hearing officers are entitled to absolute immunity for their actions.  *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (holding that officer presiding over parole revocation hearing was performing quasi-judicial function and entitled to absolute immunity).  Defendants O'Connor, Roy and Richard were members of the panel at the plaintiff's parole hearing.  Any actions they took in connection with the parole hearing are protected by absolute immunity.

The plaintiff also alleges that defendants Murphy and Ziolkowski violated his Eighth Amendment rights by failing to ensure that he was provided rehabilitative programs to enable him to meet the parole requirements.  The denial of rehabilitative programs does not rise to the level of an Eighth Amendment violation.  *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) (deprivation of rehabilitative and educational programs does not violate the Eighth Amendment).  In addition, the defendants are not required to ensure that an inmate is granted parole at his first hearing.  *See Adams v. Fisher*, No. 09 Civ. 2068(CM), 2010 WL 4457302, at *8 (S.D.N.Y. Oct. 26, 2010).  All Eighth Amendment

claims relating to the alleged denial of rehabilitative programs are being dismissed pursuant to 28 U.S.C. § 1915A.[1]

Finally, the plaintiff alleges generally in his amended complaint that the Department of Correction and Board of Pardons and Parole conspired to cause him harm and deny him parole.

The Second Circuit has consistently held that a claim of conspiracy to violate civil rights requires more than general allegations.  Expansive allegations must be supported by specific instances of misconduct.  *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002); *see also, e.g.*, *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999) (holding that vague, general or conclusory allegations of conspiracy are insufficient to withstand a motion to dismiss).

To state a claim for conspiracy under section 1983, the plaintiff must allege facts showing an agreement between two or more state actors to act in concert to inflict an unconstitutional injury on the plaintiff and an overt act done in furtherance of the conspiracy that causes damages.  *See Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  Also, if the underlying claim is dismissed, a conspiracy claim cannot stand.

---

[1]Under 28 U.S.C. § 1915A (2000), the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous, malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  The court has reviewed the newly added claims in the amended complaint under this standard.

13

*See U.S. v. All Meat and Poultry Prods. Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 829 (N.D. Ill. 2007).  The court has granted the defendants' motion to dismiss the claim that they denied the plaintiff parole.  Thus, the conspiracy claim necessarily fails.

IV.  <u>Conclusion</u>

The plaintiff's motion to amend [**doc. #24**] is hereby **GRANTED**.  The Clerk is directed to docket the proposed amended complaint.

The defendant's motion to dismiss [**Doc. #16**] is hereby **GRANTED**.  In addition, the court dismisses all claims against newly added defendant Brian Murphy pursuant to 28 U.S.C. § 1915A.

The Clerk shall enter judgment and close this case.

It is so ordered.

Dated at Hartford, Connecticut this 20th day of May 2011.


_____
            /s/AWT
      Alvin W. Thompson
   United States District Judge

14